UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PETER HATT-LIPSCOMB,<br><br>      Plaintiff,<br><br>v.<br><br>BAYSIDE ORTHOPAEDICS, INC.;<br>MATTHEW N. BROWER; RONALD<br>T. COOK; MEDICAL DEVICE<br>BUSINESS SERVICES,<br>INCORPORATED (f/k/a DEPUY,<br>INC.; DEPUY ORTHOPEDICS, INC.;<br>and DEPUY ORTHOPAEDICS, INC.);<br>DEPUY SYNTHES SALES<br>INCORPORATED; JOHNSON &<br>JOHNSON SERVICES,<br>INCORPORATED; and JOHNSON &<br>JOHNSON,<br><br>      Defendants. | Case No.: _____<br><br>State Court Case No.: 2022 CA 000817 |

## **NOTICE OF REMOVAL**

Defendants Medical Device Business Services, Inc. (f/k/a DePuy Orthopaedics, Inc.) ("DePuy"), DePuy Synthes Sales, Inc., Johnson & Johnson, and Johnson & Johnson Services, Inc. (collectively, the "removing defendants"), by their undersigned attorneys, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the Middle District of Florida, Tampa Division.

1

## NATURE OF THE ACTION

1. On or about February 23, 2022, plaintiff Peter Hatt-Lipscomb, a citizen of the state of Florida, filed a lawsuit in the Circuit Court of the Twelfth Judicial Circuit for Sarasota County, Florida, titled *Hatt-Lipscomb v. Bayside Orthopaedics, Inc.*, No. 2022 CA 000817 NC.  In his Complaint, plaintiff asserted various product liability claims against Bayside Orthopaedics, Inc. ("Bayside"), a now-defunct Florida-based distributor of the Pinnacle hip system, and Matthew Brower and Ronald Cook, who served alternately as President and CEO of Bayside.  On March 11, plaintiff filed an Amended Complaint, adding DePuy, DePuy Synthes Sales, Inc., Johnson & Johnson and Johnson & Johnson Services, Inc. as defendants.

2. This is one of thousands of similar cases filed around the country involving personal injury allegations by plaintiffs who were implanted with a Pinnacle Cup System, a hip replacement device manufactured by DePuy.  On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, 787 F. Supp. 2d 1358 (J.P.M.L. 2011), before Judge James E. Kinkeade in the United States District Court for the Northern District of Texas. Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Panel's Rules.

3. The present case reflects a clear strategy by the law firm representing Mr. Hatt-Lipscomb of attempting to evade federal diversity jurisdiction (and inclusion in the MDL proceeding) by initially naming only one or two peripheral distributors of the Pinnacle Cup System as the sole defendants, and subsequently joining the DePuy and J&J-related entities, which are the real intended targets of the litigation.

4. While courts generally apply the fraudulent joinder doctrine in cases where a plaintiff simultaneously names a nominal non-diverse defendant alongside a fully diverse, proper defendant, it is the validity of the claims asserted against the non-diverse defendant – not the order of joinder – that controls the question of federal subject-matter jurisdiction. Otherwise, plaintiffs could avoid removal simply by suing only non-diverse defendants at the outset.

5. As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over the case pursuant to 28 U.S.C. § 1332, and the removing defendants have satisfied the procedural requirements for removal.

## I. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

6. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in

3

controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

      **A.**      <u>**The Parties That Are Not Fraudulently Joined Are Diverse.**</u>

      7.      Plaintiff Peter Hatt-Lipscomb is, and was at the time this action commenced, a citizen of the State of Florida. (*See* Am. Compl. ¶ 1.) Publicly available records indicate that plaintiff has maintained a Florida address for at least 17 years, has an active Florida Driver's License, and is a registered Florida voter. *See Callahan v. Countrywide Home Loans, Inc.*, No. 3:06CV105, 2006 WL 1776747, at *5 (N.D. Fla. June 26, 2006) (reasoning that, in determining domicile, a court may consider various factors including "whether the party owns real property in the state, has a state driver's license, is registered to vote in the state, and pays income taxes in the state"). Accordingly, plaintiff is a citizen of the State of Florida.

      8.      DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

      9.      DePuy Synthes Sales, Inc. is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Massachusetts with its principal place of business in Raynham, Massachusetts, and is therefore a

4

citizen of the State of Massachusetts for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

10. Johnson & Johnson Services, Inc. and Johnson & Johnson are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

11. Bayside, Brower and Cook are alleged to be citizens of the State of Florida. (Am. Compl. ¶¶ 2-5.)

12. Thus, plaintiff is diverse from all defendants except Bayside, Brower and Cook.

13. Although Bayside, Brower and Cook are alleged to be citizens of Florida, their presence in this action does not defeat diversity jurisdiction because both are fraudulently joined.

14. Accordingly, there is complete diversity of citizenship between plaintiff and the properly joined and served defendants, and this matter is removable to federal court. 28 U.S.C. §§ 1332(a), 1441(a).

A. **Plaintiff Has Fraudulently Joined Bayside, Brower And Cook And Their Citizenship Should Therefore Be Disregarded.**

15. Bayside, Brower and Cook are fraudulently joined, and their citizenship should therefore be disregarded for purposes of determining whether removal is

5

proper. *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 841 F. App'x 132, 134 (11th Cir. 2020) (per curiam) ("[I]f the plaintiff fraudulently joins a non-diverse defendant to defeat complete diversity, then that non-diverse defendant is not considered for purposes of the court's jurisdiction."). Joinder of a non-diverse defendant is deemed fraudulent where "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Berber v. Wells Fargo Bank, N.A.*, 760 F. App'x 684, 687-88 (11th Cir. 2019) (per curiam) (citation omitted). As the Eleventh Circuit has recognized, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) ("[P]ossible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'") (citation omitted); *see also, e.g.*, *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1379 (M.D. Fla. 2009) (denying motion to remand where plaintiff did "not establish[] 'even a possibility' of a valid claim against" a distributor of hip implants). "[T]he process for resolving a claim of fraudulent joinder is similar to the one used for a motion for summary judgment—a court can consider the plaintiff's pleadings and any affidavits . . . submitted by the parties when determining if a party was fraudulently joined." *Illoominate Media*, 841 F. App'x at 135.

6

16. Bayside, Brower and Cook are fraudulently joined under this standard because claims against **non-manufacturers** of an FDA-cleared product are preempted by federal law. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624-25 (2011); *Mut. Pharms. Co. v. Bartlett*, 570 U.S. 472 (2013). Plaintiff does not allege any facts capable of establishing that Bayside, Brower or Cook, which detailed DePuy's products to physicians and hospitals, played any role in the manufacture or design of the Pinnacle Cup System – and the evidence in the record establishes that they did not. (*See* Decl. of Matthew Brower ¶ 13, Apr. 21, 2022 (Bayside did not play any "role in the research, design, manufacture, development, or testing of the Pinnacle hip replacement system") (attached as Exhibit 1).)

17. In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption. 564 U.S. at 624-25. According to the Supreme Court, generic manufacturers cannot be found liable on a theory of failure to warn because generic manufacturers have no power to unilaterally effectuate a label change; rather, they must use the same labels and warnings as those approved by the FDA with respect to the brand-name version of the drug. *Id.* at 613-15. Thus, as long as the labels and warnings for the generic form of the drug match the labels and warnings that the FDA has approved for the

7

brand-name form of the drug, generic manufacturers cannot as a matter of law be held liable under state tort law for failing to warn.

19. Although *Mensing* involved failure-to-warn claims, the Supreme Court reached a similar conclusion as to product-design claims as well. In *Bartlett*, the Supreme Court held that a generic manufacturer could not "legally make [the relevant product] in another composition" under the Federal Food, Drug and Cosmetic Act ("FDCA"). *Bartlett*, 570 U.S. at 483-84 (citation omitted). As the Court explained, "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)-(v) and (8)(B); 21 C.F.R. § 320.1(c)). Because it was "not possible" for the generic manufacturer defendant in *Bartlett* to "redesign" the product at issue to make it more useful or less risky, the Court concluded that federal law likewise preempts claims based on a defective-design theory. *See id.*; *see also Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1247, 1249-50 (11th Cir. 2013) (recognizing the holding in *Mensing* that "lawsuits against generic manufacturers for failure to warn or for the inadequacy of the drug's labeling are preempted by federal law" and holding that "[w]here federal and state law conflict, state law must yield"); *Metz v. Wyeth, LLC*, 525 F. App'x 893, 893 (11th Cir. 2013) (holding that the opinions in *Bartlett* and *Guarino* "disposed of all the claims before us, including the [plaintiff's] negligent design claim").

8

19. As courts applying Florida law have held, these principles apply in spades to non-manufacturing defendants such as Bayside, Brower and Cook. After all, Bayside, Brower and Cook had "no authority" to effectuate changes to the product or its labeling. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1234, 1247 (S.D. Fla. 2020) (dismissing claims against distributors and retailers of brand-name and generic products and holding that "[p]laintiffs have provided no citation to a case where similar claims against retailers (or distributors) survived a pre-emption analysis"); *Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165 (S.D. Fla. 2020) (holding warning- and other product-liability claims against distributor of branded drug preempted under *Mensing* because the distributor had no "authority" to "unilaterally" make changes to the FDA-approved labeling).

20. For example, in the *In re Zantac* MDL proceeding, the court held that the distributors had "no ability to alter a label or alter a [] design; thus, claims against them premised on labeling and design are preempted." 510 F. Supp. 3d at 1250-51. The court reasoned that "[c]ourts have routinely reached this conclusion over the years since *Bartlett* and *Mensing* were decided" and concluded that, as a broad proposition, "courts dismiss design and label-based claims against any defendant that is powerless to alter a design or alter a label." *Id.* at 1251.

21. Courts in other jurisdictions have reached the same holding under similar circumstances involving other distributors. *See In re Fosamax (Alendronate*

*Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-JAP-LHG, 2012 WL 181411, at *4 (D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it'") (citation omitted); *Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, [the defendant] had no ability to change labeling or warnings and thus, like a generic manufacturer, [it] cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

22.   In *In re Fosamax*, for example, the court granted a distributor's motion for judgment on the pleadings after finding that the plaintiffs' state-law claims were preempted.  2012 WL 181411, at *4.  The plaintiffs in *Fosamax* asserted a number of claims against "the authorized distributor of branded Fosamax" that "emanated from a general theory of failure to warn," including "defective design, negligence, fraud, misrepresentation, breach of express and implied warranties, violation of consumer protection statutes, restitution, and loss of consortium." *Id.* at *1 (citation omitted).  In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of Fosamax, [the distributor] ha[d] no power to change Fosamax labeling." *Id.* at *3.  According to the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in that case, Merck.  *Id.*

10

Additionally, the court noted that if the FDA had become aware of new safety information in connection with Fosamax use that it believed should be included in the labeling, the FDA would have notified Merck – not the distributor. *Id.* Because the distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it.'" *Id.* at *4 (quoting *Mensing*, 564 U.S. at 620-21). Accordingly, the court found that "the state law claims brought against [the distributor] [were] preempted." *Id.*

23.     Here, all of the allegations in the Amended Complaint against Bayside, Brower and Cook rest on either a theory of failure to warn or a theory of defective design.[1] (*See, e.g.*, Am. Compl. ¶ 42 ("Distributor advanced misinformation about the product within the medical community and purposefully omitted or failed to tell the medical community about the negative information known about the product so as to seduce[] hospital administrators and surgeons, including Plaintiff's hospital and surgeon, to utilize the Pinnacle."); *id.* ¶ 70 ("The Pinnacle system is defective because it causes release of toxic heavy metals due to the articulation of two cobalt

---

[1]     Although plaintiff nominally asserts a claim for strict liability under a theory of defective manufacture against "ALL DEFENDANTS" (*see* Am. Compl. ¶¶ 230-234), that claim alleges that the Pinnacle Cup System hip implants contained "defects that made them unreasonably dangerous beyond the expectations of the ordinary consumer, and were unfit for their intended use" (*id.* ¶ 231) – which sounds in design defect, not manufacturing defect. *See In re Standard Jury Instructions in Civil Cases*, 290 So. 3d 840, 841-43 (Fla. 2020) (setting forth separate standards for manufacturing defect and design defect, and noting that the "consumer expectations" test is one possible test for "design defect" – not manufacturing defect).

11

chrome metal alloy surfaces against each other."); *id.* ¶ 225 ("The Pinnacle was defective and unreasonably dangerous in that the labeling was insufficient to warn users of the hazardous conditions posed by said items . . . .").) But Bayside, Brower and Cook had "no authority" to effectuate changes to the products or their labeling, *In re Fosamax*, 2012 WL 181411, at *4; nor could they possibly "redesign" the products to make them more proper, appropriate or correct, *see Bartlett*, 570 U.S. at 483-84.

24. The handful of cases in this District that have rejected preemption arguments with respect to distributors, *see, e.g.*, *Brush v. Bayside Orthopaedics, Inc.*, No. 8:14-cv-2163-T-36EAJ, 2014 WL 5426643, at *3 (M.D. Fla. Oct. 22, 2014), should not be followed. The thrust of these courts' rationale is that *Mensing* does not apply where – as here – a plaintiff claims that a distributor not only failed to warn, but also "distributed promotional literature and information that was misleading." *Id.* at *4. But such a construction of *Mensing* is far too narrow, as another court implicitly recognized in connection with another Pinnacle removal in Ohio. *See Hall v. OrthoMidwest, Inc.*, No. 1:21-cv-00897, 2021 WL 2093444, at *4 (N.D. Ohio May 24, 2021).

25. There, as here, the allegations were that the distributor defendants not only failed to warn but also disseminated marketing materials created by DePuy. *See id.* at *6. The *Hall* court made clear that "principles of conflict preemption likely

12

bar claims under State law against a distributor" and that "the rationale of *Mensing* and its progeny applies with equal force on facts like those alleged here." *Id.* at *4.[2] This is consistent with cases holding that allegations of misrepresentations beyond a label are preempted because, "[d]espite the different 'labels' given these claims, the essence of these claims is that important safety information as to [the product] was not disseminated, or made clear, to the public or to the medical community." *Moretti v. Mut. Pharm. Co.*, 852 F. Supp. 2d 1114, 1118 (D. Minn. 2012), *aff'd*, 518 F. App'x 486 (8th Cir. 2013) (per curiam).

26. In sum, plaintiff's claims against Bayside, Brower and Cook have no reasonable possibility of success because they are preempted, and the distributor defendants are therefore fraudulently joined.

B. **The Amount In Controversy Exceeds $75,000.**

27. The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of plaintiff's Amended Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

---

[2] Although the *Hall* court concluded that "the current procedural posture does not provide the appropriate vehicle" for a formal preemption ruling, *see id.*, it is unclear why the court reached that conclusion, and the *Hall* court's reasoning regarding preemption supports a finding of fraudulent joinder here.

13

28. Although the Amended Complaint does not specify the amount of damages sought, the allegations make clear that the amount in controversy exceeds the jurisdictional threshold. *See, e.g.*, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (holding that the amount in controversy requirement is met where it is "facially apparent" from the complaint that the jurisdictional minimum is exceeded) (citation omitted); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87-89 (2014) (a defendant may properly remove based on a simple pleading that asserts a "plausible allegation" that the amount in controversy exceeds $75,000, exclusive of interest and costs).

29. District courts need not "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." *Pretka*, 608 F.3d at 770 (citation omitted). Rather, in conducting this analysis, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

30. It is widely recognized that personal injury claims like those asserted here facially meet the $75,000 jurisdictional threshold. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously

14

asserts a claim exceeding $75,000"); *Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

31. Plaintiff in this action claims that he suffered injuries, "including, but not limited to: past, present and future physical and mental pain and suffering; physical disability; past, present, and future medical, hospital, rehabilitative, and pharmaceutical expenses; and other related damages" (*see* Am. Compl. ¶ 218), as well as "emotional trauma and distress" (*see id.* ¶ 215).

32. Given plaintiff's claim that he has suffered substantial personal injuries, it is evident that the amount of recovery sought by plaintiff exceeds $75,000.

## II. THE REMOVING DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

33. Each of the removing defendants was served with plaintiff's Amended Complaint on March 25, 2022. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

34. The Circuit Court of the Twelfth Judicial Circuit for Sarasota County, Florida is located within the Middle District of Florida, Tampa Division. *See* 28 U.S.C. §§ 89(b), 1441(a). Therefore, venue for this action is proper in this Court because the Middle District of Florida is the "district and division embracing the place where such action is pending." *See id.*

35. None of the removing defendants is a citizen of the State of Florida, the State where this action was brought. *See* 28 U.S.C. § 1441(b).

36. While removal based on traditional diversity jurisdiction generally requires the consent of all defendants, it is well settled that only properly joined defendants need consent to removal. *See Romano v. Am. States Ins. Co.*, 295 F. Supp. 3d 307, 318 (W.D.N.Y. 2017). Here, plaintiff's claims against Bayside, Brower and Cook are fraudulently joined with his claims against the removing defendants. Therefore, Bayside, Brower and Cook need not consent to removal.

37. No previous application has been made for the relief requested herein.

38. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Circuit Court of the Twelfth Judicial Circuit for Sarasota County, Florida, are attached hereto as Exhibit 2.

39. WHEREFORE, the removing defendants give notice that the matter bearing No. 2022 CA 000817 NC in the Circuit Court of the Twelfth Judicial Circuit for Sarasota County, Florida, is hereby removed to the United States District Court for the Middle District of Florida, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated: April 25, 2022                    Respectfully submitted,

/s/ David J. Walz
David J. Walz
Florida Bar Number 697273
Caycee D. Hampton

        Florida Bar Number 0100922
        CARLTON FIELDS, P.A.
        4221 W. Boy Scout Blvd.,
        10th Floor (33607)
        P.O. Box 3239
        Tampa, Florida 33601
        Telephone: (813) 223-7000
        Fax: (813) 229-4133
        Email:    dwalz@carltonfields.com
                     champton@carltonfields.com

        *Attorneys for Defendants*